KILGOUR v. NATIONAL BANK OF PORT JERVIS et al.

(Circuit Court, S. D. New York. October 16, 1899.)

EQUITY PRACTICE—FINDINGS OF MASTER.
> The findings of a master on questions of fact will not be disturbed, unless it is manifest upon the evidence that they are wrong.

On Exception to Master's Report.

Wm. S. Bennett, for complainant.
Lewis E. Carr, for defendants.

WALLACE, Circuit Judge. In disposing of the exceptions to the master's report, the principles of Judge Wheeler's decision (86 Fed. 39), when ordering an interlocutory decree for the complainant, ought to be adhered to, but I have encountered some embarrassment because of my uncertainty as to the precise scope of that decision. The decree adjudges merely that the complainant is entitled to a judicial statement of the sum actually due in equity, if any, from the complainant to the defendants, under the agreement of December 14, 1894, "regardless of the releases therein," and orders a reference to the master to ascertain the amount, and does not otherwise disturb the agreement.

When the agreement was made the defendants held in trust for the complainant, and as security for advances made to him by the bank, a considerable amount of real and personal property which had formerly belonged to the complainant, but had been sold under executions against him, and acquired at the sales by the defendants. Besides the property of which the trust estate consisted at that time, the defendants had held other real and personal property in trust for the complainant, had sold it, and had applied the proceeds towards the payment of the indebtedness owing the bank by the complainant; but at the date of the agreement the trust estate then in the hands of the defendants consisted of the Parker Glen property (real and personal), the Passaic property (real estate), and certain real estate in New York, and the defendants claimed that the complainant's indebtedness to the bank was approximately $59,000. By the agreement, the indebtedness was fixed at $61,938, including an advance of $2,100 thereafter to be made to the complainant by the defendants. The complainant covenanted to pay the amount in installments to the defendants, and release them from every liability growing out of past transactions; and it was provided that the defendants should retain the title to the Passaic property until the indebtedness was wholly paid, should transfer the title of all the rest of the trust estate to the complainant or his nominees, and that the complainant or his nominees should secure the payment of $20,000 of the indebtedness by a mortgage on the Parker Glen real estate, and of $5,000 by a mortgage on the New York real estate, the mortgages to be payable, as to principal and interest, at the specified dates. Obviously, the agreement contemplated the termination of the trust relations between the parties, and that when it was performed by the defendants they should be thenceforth merely creditors of the complainant, hav-

ing, as security for their debt, the two mortgages and the Passaic real estate.

When the present suit was brought, the terms of that agreement had been fully carried out on the part of the defendants. They had conveyed and turned over to nominees of the complainant, for his benefit, all the trust estate except the Passaic · real estate. His nominees had executed the mortgages for $20,000 and $5,000. He had paid $12,000 upon his indebtedness to the bank. He had, however, failed to pay an installment of $4,000 which had become due, and the interest payable by the terms of the mortgages was also in default. The object of the complainant's bill was to set aside the mortgages, annul the title of the defendants to the Passaic property, and compel the defendants to account as though the agreement had never been made, upon the theory that when it was made he had fully paid his real indebtedness to the defendants, and was misled by their representations as to the amount.

Judge Wheeler's opinion treats the agreement as a security in the nature of a mortgage, "which may be redeemed although the law day is past," and to be enforced only to the extent of the sum found to be owing the defendants after accounting for moneys and property of the complainant which had come to their hands. Reading the decree in the light of the opinion, it appears that, while neither the agreement nor the mortgages are annulled, ·it is the purpose of the decree not to permit them to be enforced beyond the amount of the real indebtedness of the complainant, and to permit the complainant, upon paying that indebtedness, to be restored to his position at the time of the agreement. He says: "When that sum is ascertained, the plaintiff seems to be entitled to a decree for redemption."

If this is a correct view of the decision, it would seem that the accounting before the master should have been confined to ascertaining the indebtedness of the complainant to the defendants when the agreement of December 14, 1894, was made, as preliminary to a final decree directing the defendants, upon payment of the amount found due, to transfer to the complainant all the property then in their hands, not, of course, including that subsequently transferred to him or for his benefit pursuant to the agreement. Indeed, the interlocutory decree, by its terms, confines the accounting to a statement of the sum actually due, "by reason of the matters and things alleged in the pleadings"; thereby inferentially excluding an accounting in reference to transactions arising after the bringing of the action. But the master, obviously acting with the concurrence of all the parties, has extended the scope of the accounting, not only to include transactions which arose subsequent to the agreement, but also those which arose subsequent to the suit, and has charged the defendants with $17,500 as the value of the Parker Glen property, which was sold on a foreclosure of the $20,000 mortgage, in December, 1896, purchased by the defendant Scott, and resold by him in February, 1898. The defendants, upon the argument of the exceptions in this court, acquiesced in the master's finding upon this point. The complainant, however, insisted that the defendants should be charged with a much larger sum as the value of that property, and for the

value of the use of the property intermediate the purchase upon the foreclosure sale and the resale. As I do not regard either of these items as germane to the account, I cannot consider the exceptions of the defendants which relate to them, but, without passing upon them, will leave them to be disposed of by Judge Wheeler when the cause comes before him for final decree. For the same reasons, the same disposition will be made of the exceptions relating to the items for the personal property at Parker's Glen bought by the defendants of the vendees at execution sales, and of the exceptions relating to the items for the Passaic property. The exceptions to the findings of the master in regard to the Shohola Glen property are based, I think, upon a misconception of Judge Wheeler's opinion. That property was at one time part of the trust estate. It had been sold by the defendants in 1891 for the price of $28,500 (less the amount of the pre-existing mortgages assumed by the purchasers), and the amount realized had been credited in account to the complainant, and the title transferred to the purchasers. The price was a fair price at the time. The complainant had acquiesced in the sale, and thenceforth no trust relation had existed between the complainant and the defendants in regard to that property. Subsequently the defendant Scott acquired the property again at a judicial sale, not with any trust funds of the complainant, but by a purchase with his own funds, and thereafter he sold the property again at an advance. An expression in the opinion of Judge Wheeler implies that the defendants are to account for the Shohola Glen property upon the basis of the price realized at the later sale by Scott. No reason is stated why they should account for this price; the opinion does not intimate that the earlier sale was unfair or invalid; and it is doubtful whether Judge Wheeler regarded the later sale as made while the defendants were still trustees in respect to the property, or whether he supposed that there had been but one sale, and that the true amount of the purchase price at that sale had not been allowed to the complainant in the account. The master thought Judge Wheeler meant to treat the defendants as trustees at the time of the later sale; and upon this theory he not only charged them upon the basis of the price then realized, but also for the rents and profits of the property for a period intermediate the two sales. In this I differ with the master. As I understand the opinion, the learned judge did not intend to charge the defendants for the proceeds of a sale made by Scott after the trust relation had terminated. It seems reasonable to infer that he overlooked the circumstance of the earlier sale, and intended to charge the defendants with the price realized at the later sale, because he understood that to have been the only sale. It cannot be that he intended to decide that, after Scott had ceased to be a trustee in respect to the property, he was not at liberty to buy it, and make a profit out of it if he could. As to that property, the trust relation had been extinguished, and Scott was entitled to deal with it just as he would have been if the trust relation had never existed. That the learned judge misapprehended the facts is apparent, because his opinion states that Scott bought the property at a judicial sale for $28,000, and credited the complainant with the amount of the bid instead of

the price for which he sold it. In this view, the 2d, 5th, 8th, 17th, and 30th exceptions of the complainant should be overruled, subject, however, to the reconsideration of Judge Wheeler at final decree. The defendants excepted to the master's findings, but upon the present hearing have not insisted upon the exceptions. The other exceptions of the defendants relate to the findings of the master as to items of the account in respect to which the evidence is conflicting. After examining the evidence with care, I cannot conclude that it does not justify the findings; much less does it establish them to be clearly erroneous. Without entering upon an analysis, it suffices to say that, so far as the case for the complainant rests upon his own testimony (and as to the most important items it rests wholly upon his testimony), that testimony is disparaged, if not quite discredited, by the admissions of the complainant at the time of making the agreement of December 14, 1894, and at the time of making the earlier agreement. As to these exceptions, the rule, therefore, should be applied that findings of the master upon questions of fact are not to be disturbed, unless it is manifest upon the evidence that they are wrong.

An order may be entered in conformity with this opinion.